745 F.2d 1406
 40 Fed.R.Serv.2d 416
 George WILLIAMS, Jr., et al., on behalf of themselves and
all others similarly situated, Plaintiffs-Appellants,
v.
CITY OF DOTHAN, ALABAMA; Kenneth Everett, Mayor;
Commissioners John H. Glanton, Jr., Raimon G. Thomas, Matt
Bullard, S.A. Cherry, Sr., and their successors and agents
in their official capacities, Defendants-Appellees.
 Nos. 83-7379, 83-7522 and 83-7539.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 5, 1984.
 
 James R. Seale, Montgomery, Ala., T.E. Buntin, Jr., D. Taylor Flowers, Dothan, Ala., for defendants-appellees.
 Robert E. Weisberg, David M. Lipman, Miami, Fla., Steven D. Caley, Elizabeth R. Herbert, Legal Services Corp. of Alabama, Dothan, Ala., Abigail Turner, Legal Services Corp. of Ala., Mobile, Ala., for Williams, et al.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.
 VANCE, Circuit Judge:
 
 
 1
 In this suit, a group of minority residents challenge tax assessments imposed by the city of Dothan, Alabama to pay for a street paving and sewer improvement project in their neighborhood. They contend that the city has violated their equal protection rights by contributing a lower percentage of municipal funds to this project than it has contributed to comparable projects in the past which were located in predominantly white areas. The district court granted the city's motion for summary judgment, reasoning that the plaintiffs' claim was barred by statutory and common law estoppel and the Tax Injunction Act, 28 U.S.C. Sec. 1341. We conclude that the plaintiffs are entitled to their day in court and therefore reverse.
 
 I. FACTUAL BACKGROUND
 
 2
 Dothan is the largest municipality in the wiregrass region of southeastern Alabama. Ten years ago, a federal district court found that "there has been and still remains substantial and pervasive racial discrimination in Dothan." Yelverton v. Driggers, 370 F.Supp. 612, 618 (M.D.Ala.1974). The court noted that housing was almost entirely segregated; that there were separate city recreation centers and Boys' Clubs for blacks and whites; that "employment in city jobs, above menial levels, is almost entirely limited to whites"; and that municipal services "have been noticeably neglected in the black areas of town." Id. On the basis of these and other facts, the court concluded that "the City of Dothan has, in the past, evidenced a clear lack of responsiveness to the physical needs of its black citizens." Id.[1] It therefore declared that the city's officials were under "an affirmative duty to provide to blacks their proportionate share of governmental services, employment, and rights of representation on city boards and commissions, in order to remedy the effects of past denial to blacks of access to the political process in Dothan." Yelverton v. Driggers, No. 1305-S, slip op. at 2 (M.D.Ala. Feb. 7, 1974).
 
 
 3
 Since that order, Dothan has finalized two municipal improvement projects to be financed by special assessments. The first of these, Project 30, was primarily located in a white neighborhood, while the second, Project 31, was located in an area that was predominantly black. Project 30 was initiated in 1973, and the assessment amount was fixed by the city in Resolution 5270 in the spring of 1976. Under Resolution 5270, the city contributed $1,334,328.36 of the cost of Project 30, which amounted to 48.7% of the total, and property owners within the area paid the remaining $1,404,231.91, or $8.00 per foot of street paving. Project 31 was initiated in late November 1978, when the City Commission enacted Ordinance 5950. The city ultimately fixed the assessment amount for Project 31 in Resolution 6803, which was passed in January 1982. It set the city's contribution at $912,276.27. Although the parties calculate the final cost of Project 31 differently and therefore disagree as to the percentage of the total which was paid by Dothan, it is clear that the proportion ultimately paid by the city--whether 14.8% as the plaintiffs assert or 30.2% as the city contends--was significantly less than that which it had paid for Project 30. Property owners in the Project 31 area were charged $23.83 per assessed foot for street paving and $6.06 per assessed foot for sanitary sewer lines.[2]
 
 
 4
 Soon after the Commission initiated Project 31,[3] it published notice of the maximum costs to be assessed property owners. After the notice was published, but before construction began, the Commission held a public hearing on the proposal on December 7, 1978. A number of area residents--including at least fifteen of the named plaintiffs in this case--appeared to object to the proposed assessments. Some requested that their streets be removed from the project, while others (such as lead plaintiff George Williams) indicated that they favored the improvements but felt that the cost was too high. After deleting twenty streets from the project, the city proceeded with the improvements on the remainder, which were completed in late 1981. Then, pursuant to Ala.Code Secs. 11-48-26 and 11-48-27 (1977), the city scheduled public hearings on December 15, 1981 and January 5, 1982 to hear all objections to the proposed assessments. At the January 5 meeting lead plaintiff George Williams filed a petition signed by over one hundred residents of the area, objecting to the amounts they would be charged for Project 31.[4] Nevertheless, the City Commission subsequently passed Resolution 6803, which set the assessments at a level only slightly below the maximum figure proposed in 1978. That resolution was finalized on February 1, 1982. Nine months later, a group of 203 plaintiffs filed this lawsuit as a class action under Fed.R.Civ.P. 23(b)(2).[5] We now turn our attention to the merits of the defendants' motion for summary judgment.
 
 II. THE SUMMARY JUDGMENT MOTION
 
 5
 We begin our analysis with the basic principle that summary judgment should not be granted unless "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All reasonable doubts and inferences must be resolved in favor of the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Because an appellate court must affirm the lower court's judgment if the result is correct even though it is based upon an improper ground, SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943), we will consider all of the arguments originally advanced by the defendants in support of their motion for summary judgment, even though the district court's order expressly relied on only statutory and equitable estoppel and the jurisdictional bar of the Tax Injunction Act.
 
 A. The Estoppel Issue
 
 6
 Asserting that "[t]he undenied evidence before the Court shows that the assessments were duly made and that no written objections were filed to the proposed assessments," the district court concluded that the plaintiffs were barred from bringing this suit on the basis of both statutory and common law doctrines of estoppel. The district court relied principally on Ala.Code Sec. 11-48-26, which provides:
 
 
 7
 The owner or owners of any real estate or any interest therein which it is proposed to assess for the cost or any part thereof of said improvement may appear at any time on or before the date named in said notice or at said meeting and file in writing with the clerk or in his office any objections or defense to the proposed assessment against said property or to the amount thereof, and persons who do not file objections or protests in writing against such assessment shall be held to have consented to the same.
 
 
 8
 See also Commonwealth Life Ins. Co. v. First Nat'l Bank, 230 Ala. 257, 160 So. 260, 261 (1935); Jones v. City of Dothan, 230 Ala. 103, 159 So. 689, 690 (1935); cf. Chicago, Milwaukee, Saint Paul & Pac. Ry. Co. v. Risty, 276 U.S. 567, 575, 48 S.Ct. 396, 399, 72 L.Ed. 703 (1928) (finding similar South Dakota statute to comply with due process). The district court also relied on the common law doctrine of equitable estoppel, under which courts have held that a property owner who accepts a public improvement beneficial to his property without making any objection forfeits the right to object to an assessment of his property for the cost of the improvement. See, e.g., Lumbermen's Trust Co. v. Town of Ryegate, 61 F.2d 14, 26 (9th Cir.1932); City of Orangeburg v. Southern Ry. Co., 55 F.Supp. 171, 180 (E.D.S.C.), rev'd on other grounds, 145 F.2d 725 (4th Cir.1944), cert. denied, 324 U.S. 860, 65 S.Ct. 866, 89 L.Ed. 1417 (1945).
 
 
 9
 The district court has erred in this case, however, by accepting the defendants' rendition of the facts. They assert that the plaintiffs "fail[ed] to make a protest in any fashion," and thereby "acquiesced in the progression of the paving project from start to finish and thus gave the appearance of their approval." The record indicates, however, that lead plaintiff George Williams and at least fifteen of the other named plaintiffs in this action appeared at an initial public hearing less than three weeks after Ordinance 5950 was enacted to protest the maximum assessments which the City Commission had approved, and many of the others who protested on that occasion would presumably qualify for membership in the plaintiff class. Williams and others also attended an additional hearing in early 1982 where they presented a petition to the City Commission objecting to the proposed assessments. The plaintiffs had therefore objected orally at least twice, and had presented written objections at least once, during City Commission meetings held before the assessments were finalized. We find these actions sufficient to escape the bar of section 11-48-26, particularly since past Alabama judicial decisions have repeatedly declined to construe the requirements of this statute narrowly. See, e.g., Berry v. City of Huntsville, 47 Ala.App. 587, 259 So.2d 269, 274-75 (1971), cert. denied, 288 Ala. 731, 259 So.2d 276 (1972); Hill Realty Co. v. City of Mountain Brook, 276 Ala. 191, 160 So.2d 475, 478-79 (1964); Hood v. City of Bessemer, 213 Ala. 225, 104 So. 325, 326 (1925); Wallace v. City of Florence, 16 Ala.App. 506, 79 So. 267, 268 (1918).
 
 
 10
 The record likewise refutes a finding of equitable estoppel. Under Alabama law, three conditions are necessary to such a finding.
 
 
 11
 "The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."
 
 
 12
 Mazer v. Jackson Ins. Agency, 340 So.2d 770, 773 (Ala.1976) (quoting Dobbs, Remedies Sec. 2.3 (1973)). The record in this case simply does not support the claim that the plaintiff class, taken as a whole, acted in a misleading fashion. Although some of those who would qualify for membership in the class may have failed to protest the assessments, many others did so persistently and vigorously from the time the maximum assessments were first announced. The protesters made clear that although they desired the improvements Project 31 would bring, they believed the proposed assessments were unreasonably high. Some stated even more specifically that they could not pay such amounts, which in some cases apparently exceeded the value of their property. Under these circumstances, any misconception on the defendants' part is not attributable to the plaintiffs, and we therefore conclude that neither equitable nor statutory estoppel has been established here.
 
 B. The Tax Injunction Act
 
 13
 28 U.S.C. Sec. 1341 provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Thus, the Tax Injunction Act will bar the exercise of federal jurisdiction if two conditions are met: (1) the relief requested by the plaintiff will "enjoin, suspend, or restrain" a state tax assessment and (2) the state affords the plaintiff a "plain, speedy and efficient remedy". The first condition is present here, since the former fifth circuit recognized that special street improvement assessments constitute a "tax" for the purposes of section 1341 in Tramel v. Schrader, 505 F.2d 1310, 1314-16 (5th Cir.1975), and the plaintiffs seek an injunction requiring the City "[t]o repay and/or otherwise restructure assessments to these black residents within Project No. 31 ... on a basis consistent with past practices implemented for white residents" of Dothan. The critical question is whether the appeals procedure established by Alabama law provides a remedy that is adequate enough to preclude the plaintiffs from invoking the aid of the federal court.[6]
 
 
 14
 In the years since Congress enacted the Tax Injunction Act in 1937, the Supreme Court has on several occasions considered the question of what constitutes a "plain, speedy and efficient remedy" under the statute. Early decisions such as Hillsborough Township v. Cromwell, 326 U.S. 620, 625, 66 S.Ct. 445, 449, 90 L.Ed. 358 (1946) and Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300-01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943), stressed that the critical issue is whether the available state procedure permits the taxpayer to assert his federal rights, subject to eventual review by the Supreme Court. More recently, the Court noted that the "basic inquiry" in such cases is whether state law provides "a 'plain, speedy and efficient' way for [the taxpayer] to press its constitutional claims while preserving the right to challenge the amount of tax due." Tully v. Griffin, Inc., 429 U.S. 68, 74, 97 S.Ct. 219, 56 L.Ed.2d 227 (1976).[7] Although the Court's decision three years ago in Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) held that the phrase "plain, speedy and efficient remedy" must be defined in terms of procedural rather than substantive criteria, it reaffirmed that the test of an adequate state court procedure is whether it provides taxpayers "with a 'full hearing and judicial determination' at which [they] may raise any and all constitutional objections to the tax." Id. at 514, 101 S.Ct. at 1230.
 
 
 15
 Although Alabama does provide a mechanism for taxpayers who wish to challenge an assessment for municipal improvements, we conclude that it fails to pass muster as a "plain, speedy and efficient" remedy. Ala.Code Sec. 11-48-36 (1977) states that "[a]ny person aggrieved by the decision in making any assessment may, within 20 days thereafter, appeal to the circuit court ...." A companion provision sets forth the scope of judicial review of assessment appeals: "the court shall hear all objections of the property owners to said assessment and the amount thereof and shall determine whether or not such assessment exceeds the increased value of such property by reason of the special benefits derived from the improvement, and shall enter judgment accordingly." Ala.Code Sec. 11-48-41 (1977) (emphasis added). It is this latter restriction on the scope of the circuit court's inquiry and ability to fashion relief which proves fatal to the appellees' argument here. Although some of the plaintiffs apparently do contest the assessments on the ground contemplated by the statute, the great majority of them challenge not the disparities between the assessment costs and increased value of their property, but rather the disparities between the city's proportional contribution to Project 31 and its proportional contribution to comparable projects in non-black areas. In view of the limitation imposed by section 11-48-41 on the scope of the circuit court's jurisdiction, there appears to be no way in which the plaintiffs could have secured under this statutory scheme a "full hearing and judicial determination" of their claims in the Alabama state courts.
 
 
 16
 Appellees respond with two counter-arguments. First, they point to language in Jones v. City of Huntsville, 47 Ala.App. 595, 259 So.2d 277 (1971), cert. denied, 288 Ala. 242, 259 So.2d 288 (1972), which notes that "in order for the property owner to have his 'day in court' he is entitled to present any evidence in opposition to the prima facie case presented by the transcript and which may affect the assessment or the amount thereof." Id. 259 So.2d at 283. Unfortunately for appellees, the court in that case went on to emphasize that
 
 
 17
 The motive or wisdom of the exercise of the legislative or administrative power granted to the city by statute is not an issue.
 
 
 18
 The ultimate issue to be determined after considering all objections is whether or not such assessment exceeds the increased value of such property by reason of the special benefit derived from the improvement.
 
 
 19
 Id. See also Berry v. City of Huntsville, 47 Ala.App. 587, 259 So.2d 269, 275, 276 (1971), cert. denied, 288 Ala. 731, 259 So.2d 276 (1972); Hamrick v. Town of Albertville, 219 Ala. 465, 122 So. 448, 452-53 (1929); Stovall v. City of Jasper, 218 Ala. 282, 118 So. 467, 472 (1928). These cases make it clear that Alabama's statutory scheme does not contemplate challenges to municipal assessments based on claims that the city government acted in a racially discriminatory manner.
 
 
 20
 Appellees' second counter-argument, which they raise for the first time on appeal, is equally unpersuasive. They contend that the plaintiffs could also have challenged the assessment by seeking a declaratory judgment under Ala.Code Sec. 6-6-223 (1977), which provides in relevant part that any person "whose rights ... are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status or other legal relations thereunder." Two lines of reasoning in Alabama state court opinions, however, preclude plaintiffs from seeking a declaratory judgment to challenge municipal improvement assessments. First, the Alabama Supreme Court has emphasized that the provisions of the statutory assessment scheme set forth in Ala.Code Sec. 11-48-1 et seq. (1977) constitute the sole and exclusive remedy for objections to municipal improvement assessments. In City of Boaz v. Kelley, 266 Ala. 690, 99 So.2d 192 (1957), for example, the court reaffirmed the validity of earlier decisions establishing that "an assessment ... [can] only be contested under the method the statutes provide, by appeal, not through a bill in equity to annul or to void the assessment." Id. 99 So.2d at 195. Second, the Alabama courts have consistently disapproved the use of a declaratory judgment proceeding in other contexts "[w]hen a special statutory procedure has been provided as an exclusive method of review for a particular type case ...." Howle v. Alabama State Milk Control Bd., 265 Ala. 189, 90 So.2d 752, 755 (1956); see also Parsons v. State Bd. of Registration, 416 So.2d 1031, 1033 (Ala.Civ.App.1982), cert. denied, 451 So.2d 296 (Ala.1984); Mitchell v. Hammond, 252 Ala. 81, 39 So.2d 582, 583 (1949).[8] For these reasons, we conclude that the district court erred in holding that there was a "plain, speedy and efficient" state court remedy which precluded the exercise of federal jurisdiction in this case.
 
 C. The Statute of Limitations
 
 21
 Appellees also contend that the plaintiffs' suit should be dismissed because it was filed after the statute of limitations had run on their claim. The federal civil rights acts contain no statute of limitations, so causes of action arising under section 1983 are governed by the most closely analogous state statute of limitations. Board of Regents v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980); Hess v. Eddy, 689 F.2d 977, 980 (11th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983). Both parties agree that the appropriate state statute to apply in this case is Ala.Code Sec. 6-2-39(a)(5) (1977), which provides a one-year limitation for a catch-all category comprised of "[a]ctions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section." The two sides part company, however, on the question of when the cause of action accrued. The plaintiffs suggest that the appropriate date is January 1982, when the assessment was finalized, while the defendants contend that the proper date is November 1978, when the city commission sent notice of the maximum amounts to be assessed under Project 31 to those who owned the affected property.
 
 
 22
 It is well established under Alabama law that with regard to the one-year statute, "the time of limitation begins to run when the injury happens or damage accrues." Brotherhood of Locomotive Firemen & Enginemen v. Hammett, 273 Ala. 397, 140 So.2d 832, 834-35 (1962); see King Homes, Inc. v. Roberts, 46 Ala.App. 257, 240 So.2d 679, 686 (1970); see also Sanderson v. Ford Motor Co., 483 F.2d 102, 114 (5th Cir.1973). Applying this principle to the facts of the present case, we conclude that the limitations period began to run on February 1, 1982, the date that Resolution 6803--which finalized the amount of the assessments for Project 31--became effective. Prior to that time, the City Commission had taken no final action, but had merely established a maximum charge for the assessments; plaintiffs' claim of unequal treatment remained uncertain as long as the Commission could still have chosen to reduce or alter these amounts. See, e.g., Ala.Code Sec. 11-48-29 (1977). Since the plaintiffs filed this lawsuit on November 15, 1982, they acted within the one-year limitations period and appellees' request for dismissal on this ground must therefore be rejected.
 
 D. The Issue of Discriminatory Intent
 
 23
 Finally, appellees assert that summary judgment is appropriate here because the plaintiffs have failed to produce any evidence that the Commission acted with discriminatory intent and so they cannot establish a violation of their fourteenth amendment rights. See City of Memphis v. Greene, 451 U.S. 100, 120, 101 S.Ct. 1584, 1596, 67 L.Ed.2d 769 (1981); Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Appellees note that Ala.Code Sec. 11-48-9 (1977) vests municipal officials with broad discretion in deciding how much to contribute to a given improvement project, and they contend that the affidavits submitted by city officials "clearly establish that this decision was one prompted by fiscal responsibility and the protection and welfare of the affected property's owners."
 
 
 24
 In the present posture of this case, however, we cannot conclude that "there is no genuine issue as to any material fact" with regard to the plaintiffs' claim that the city acted in a discriminatory manner. The fifth circuit has long recognized that discriminatory intent may be found to exist even where the record contains no direct evidence of bad faith, ill will or any evil motive on the part of public officials. See, e.g., Hawkins v. Town of Shaw, 461 F.2d 1171, 1173 (5th Cir.1972) (en banc); see also Lodge v. Buxton, 639 F.2d 1358, 1363 n. 8 (5th Cir. Unit B 1981) (noting that courts cannot expect to find a "smoking gun" in discrimination cases), aff'd sub nom. Rogers v. Lodge, 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982); McMillan v. Escambia County, 638 F.2d 1239, 1246 n. 15 (5th Cir.1981). The Supreme Court recognized these realities in its decision in Arlington Heights, where it noted that discriminatory intent could be established through such evidentiary factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and the legislative or administrative history of the decision. 429 U.S. at 265-69, 97 S.Ct. at 563-66. The Court has subsequently noted that "actions having foreseeable and anticipated disparate impact are relevant evidence to prove the ultimate fact, forbidden purpose," Columbus Bd. of Educ. v. Penick, 443 U.S. 449, 464, 99 S.Ct. 2941, 2950, 61 L.Ed.2d 666 (1979), and this court's decision last year in Dowdell v. City of Apopka relied on several of these factors in finding that a municipality had acted with discriminatory intent by withholding government services from predominantly black sections of the city. 698 F.2d 1181, 1185-86 (11th Cir.1983).
 
 
 25
 The plaintiffs contend that a number of these factors are present in this case, and have submitted affidavits and other evidence in support of their contentions. While we express no opinion as to the merits of their claim, we believe that a disputed factual question is clearly present here and summary judgment is therefore inappropriate.[9]
 
 III. ISSUES ON REMAND
 
 26
 In light of our reversal of the district court's decision granting the defendants' motion for summary judgment, it is necessary for us to briefly address several additional issues raised by the plaintiffs on this appeal. The first of these concerns a protective order entered by the district court at the request of the defendants limiting discovery in this case to matters occurring after January 1, 1975. The district court reasoned that "matters occurring prior to 1975 are immaterial and irrelevant to this action and ... to permit discovery thereof[ ] would be unduly burdensome to Defendants." Williams v. City of Dothan, No. 82-226-S, slip op. at 1 (M.D.Ala. Mar. 28, 1983). Appellants object strenuously to this order, noting that the Supreme Court and this circuit have repeatedly recognized that "[t]he historical background of the decision" in question can be of significant evidentiary value in discrimination cases. Arlington Heights, 429 U.S. at 267, 97 S.Ct. at 564; see also Dowdell, 698 F.2d at 1186. Information relating to the level of the city's contributions to past municipal improvement projects is therefore clearly relevant to the issue of discriminatory intent in this case; indeed, we believe it would be quite difficult for the finder of fact to reach a satisfactory resolution of this issue if the evidence at trial is restricted to a simple comparison between the city's treatment of Projects 30 and 31.
 
 
 27
 Although a district court has broad discretion in shaping the scope of discovery under Fed.R.Civ.P. 26(b), Scroggins v. Air Cargo, Inc., 534 F.2d 1124, 1133 (5th Cir.1976), this court has also established that "the Judge's discovery rulings, like his other procedural determinations, are not entirely sacrosanct. If he fails to adhere to the liberal spirit of the Rules, we must reverse." Burns v. Thiokol Chem. Corp., 483 F.2d 300, 305 (5th Cir.1973); see also Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir.1983) ("Rule 26 ... is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." (emphasis deleted)). Defendants have failed to show that production would be a significant burden to them or that the plaintiffs' requests constitute an abuse of the judicial process. These facts, particularly when viewed against the highly relevant nature of the pre-1975 information to plaintiffs' case, leads us to vacate the court's protective order.
 
 
 28
 The next issue raised by appellants concerns the district court's refusal to permit them to amend their complaint to add an allegation that the defendants' actions constituted a violation of their continuing responsibilities under the court's earlier order in Yelverton v. Driggers.[10] The district court denied the request on the grounds that it was "irrelevant and improper" and would have prejudiced the defendants by compelling additional discovery at a time when their motion for summary judgment was already before the court. Williams v. City of Dothan, No. 82-226-S, slip op. at 2 (M.D.Ala. June 14, 1983). Since we have reversed the district court's decision on the issue of summary judgment, there is no longer a significant likelihood of any prejudice to the defendants, and we believe that the amendment should be permitted in accordance with the mandate of Fed.R.Civ.P. 15(a) that "leave [to amend] shall be freely given when justice so requires."
 
 
 29
 The final issue before us on this appeal concerns the district court's order of August 16, 1983, which assessed attorney's fees and litigation costs against the plaintiffs' counsel for the expenses incurred by the defendants in pursuing the litigation after the Tax Injunction Act defense was raised. The district court reasoned that the Tax Injunction Act was "such a clear defense as to cause one to know that further litigation was frivolous," Williams v. City of Dothan, No. 82-226-S, slip op. at 3 (M.D.Ala. Aug. 16, 1983). Our decision reversing the district court on the Tax Injunction Act issue necessarily requires that the accompanying order assessing costs against the plaintiffs' counsel be vacated.
 
 IV. CONCLUSION
 
 30
 After a careful review of the facts set forth in the record and the applicable statutes and case law, we conclude that the district court erred in finding that the plaintiffs were barred from pursuing this action under principles of statutory and equitable estoppel and the Tax Injunction Act. Since we find no merit in any of the other arguments raised by the defendants in support of their motion for summary judgment, we remand this case to the district court for trial. We also vacate the district court's orders limiting discovery and awarding attorneys' fees to the defendants.
 
 
 31
 REVERSED and REMANDED, and ORDER of ATTORNEYS' FEES VACATED.
 
 
 
 [1]
 The court did note some potentially promising recent developments. Voters had recently elected new city officers who promised to remedy the deficiencies in city services which existed in the black wards, and the court decided to refrain from taking action to restructure Dothan's multi-member city commission districts until the new officials had been given an opportunity to demonstrate their sincerity. Id. at 619-20. The court's final order, issued a year later, found some continuing disparities but concluded that the defendants "are making reasonable progress at this time toward the goal of providing municipal services on a nondiscriminatory basis to all citizens of Dothan." Yelverton v. Driggers, No. 1305-S, slip op. at 1 (M.D.Ala. May 6, 1975)
 
 
 [2]
 Unlike Project 31, Project 30 apparently did not entail any significant construction of sewer lines
 
 
 [3]
 The exact date of the project's initiation was November 21, 1978, when the Commission established in Ordinance 5950 that the maximum cost to be assessed to property owners in the area would be $24.00 per assessed foot for paving and $8.00 per assessed foot for the sanitary sewer line, with the City paying all costs in excess of that amount
 
 
 [4]
 As recorded in the minutes of the Commission meeting, the petition read:
 We, the undersigned residents and property owners of the City of Dothan, Alabama, hereby protest the unreasonable [sic] high assessment costs of Paving Project 31. We petition the elected officials of the City of Dothan to adopt a more reasonable assessment for Paving Project 31. We feel that the assessments are unfair to the affected property owners because they are not anywhere near or similar to paving assessments charged citizens in nearby cities or counties of the State of Alabama. We further protest because such unreasonable [sic] high assessments affect, in the most part, Dothan's poor citizens which include most of the Dothan black community. This is unfair because when paving assessments were lowest, many Black areas of town were excluded from paving projects. Now that paving has finally come to those areas, the residents are asked to pay an unreasonable [sic] high cost. We citizens feel that this paving project is far too costly and that residents will not be able to pay the assessments. This can only lead to the loss of their property.
 
 
 [5]
 The proposed class included "[a]ll black persons who have or will pay special assessments or contribute to such payments to the city of Dothan under special assessment Project No. 31."
 
 
 [6]
 Although the Supreme Court has recognized that principles of comity may bar federal interference in state tax administration even where the Tax Injunction Act does not, see Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 107 n. 4, 102 S.Ct. 177, 181 n. 4, 70 L.Ed.2d 271 (1981), it has relied on comity only to determine whether federal courts should be restrained from awarding forms of relief other than injunctions, see Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) (declaratory judgment); McNary, 454 U.S. at 113-15, 102 S.Ct. at 184-86 (damages). The test for the adequacy of the state remedy remains the same. See McNary, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8. Reliance on comity, would, therefore, not affect the outcome in this case
 
 
 [7]
 These holdings reflect the concerns that gave rise to the Act. During the Depression, many foreign corporations sought to evade the higher taxes imposed by financially strapped state governments by securing injunctions in federal court. The lawmakers of that era discerned two evils in this practice. First, it resulted in unjust discrimination between state residents and those who could take advantage of the diversity jurisdiction of the federal courts, since the former were required "to pay first and then litigate, while [the latter] need only pay what they choose and withhold the balance during the period of litigation." S.Rep. No. 1035, 75th Cong., 1st Sess. 1-2 (1937). Second, the federal injunctions resulted in delay and disruption of state financing efforts at a time of desperate need, often forcing harassed state officials "to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy." Id. Although they were committed to ending these abuses, however, the bill's sponsors were also cognizant of the need for ensuring that federal rights were not left unprotected. Thus, they stressed that
 the bill does not take away any equitable right of the taxpayer or deprive him of his day in court. Specific provision is made that the suit will not be withdrawn from the jurisdiction of the Federal district court except where there is a plain, speedy, and efficient remedy at law or in equity in the courts of the State. A full hearing and judicial determination of the controversy is assured. An appeal to the Supreme Court of the United States is available as in other cases.
 Id. (emphasis added).
 
 
 [8]
 Appellees cite Benson v. City of Andalusia, 240 Ala. 99, 195 So. 443 (1940) and Thompson v. Chilton County, 236 Ala. 142, 181 So. 701 (1938) in support of their argument, but neither of these cases is apposite here. In the former case, the plaintiff challenged a municipal ordinance regulating ongoing "sewer service charges" as unconstitutional under the state and federal constitutions, while the plaintiff in Thompson sought a determination as to whether the county commissioners had acted illegally in collecting a monthly fee from the county for various services they had ostensibly performed in connection with public roads and bridges. Thus, neither case involved municipal improvement assessments, so the statutory scheme set forth in Sec. 11-48-1 et seq. (1977) was not at issue, and the availability of a declaratory judgment was not otherwise threatened by the existence of a preemptive alternative remedy. Finally, whereas Benson and Thompson presented challenges to the governing entities' legal authority to act--an issue amenable to prompt and effective resolution by a declaratory judgment--the present case turns on the more difficult factual question of whether the Commissioners here abused their power by acting in a racially discriminatory manner
 
 
 [9]
 We do note, however, that the mere fact that various city officials have submitted affidavits asserting that they did not act from improper motives would not be sufficient in and of itself to refute the plaintiffs' allegations once they make a prima facie showing of discrimination. In the somewhat different context of challenges alleging discrimination in the selection of grand and petit juries, for example, federal courts have repeatedly stressed that such subjective and possibly self-serving evidence must be viewed with a skeptical eye unless it is supported by more objective facts in the record. See, e.g., Castaneda v. Partida, 430 U.S. 482, 498 n. 19, 97 S.Ct. 1272, 1282 n. 19, 51 L.Ed.2d 498 (1977); Alexander v. Louisiana, 405 U.S. 625, 633, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972); Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 583, 79 L.Ed. 1074 (1935); see also United States ex rel. Barksdale v. Blackburn, 639 F.2d 1115, 1128-30 (5th Cir.) (en banc), cert. denied, 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981)
 
 
 [10]
 The proposed amendment states:
 Defendants' conduct described herein as it relates to Special Assessment Project No. 31 constitutes a perpetuation of past discrimination in violation of this Court's Order in Yelverton v. Driggers, No. 1305-S (M.D.Ala.) (United States District Court) (Order of February 7, 1975) [sic] (p 4).