[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10674

Non-Argument Calendar

_____

NICHOLAS M. BULLOCK,

Plaintiff-Appellant,

*versus*

CHARLIE PARIS,
HUBERT PARKER,
JOHN MARSHALL,
AMY ELIZABETH JOHNSON,
THERESA GOOCH,
In their individual capacity, and also
in their official capacity, as needed, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:23-cv-00054-SCJ

_____

Before JORDAN, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Nicholas Bullock, proceeding *pro se*, appeals the district court's order denying his motion for preliminary injunctive relief and dismissing in part his complaint against 14 named Gilmer County officials, David Clark, a private attorney representing Gilmer County, and unnamed Does. We have jurisdiction to hear this interlocutory appeal based on the denial of Bullock's motion for preliminary injunctive relief. As indicated in the order of this Court's administrative panel, we also have jurisdiction to reach the merits of the district court's grant—pursuant to Federal Rule of Civil Procedure 12(b)(6)—of the several Defendants' motions to dismiss.[1] *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250,

---

[1] Bullock only impliedly challenges the decision of the district court denying his motion for preliminary injunction—i.e. via his challenge to the district court's decision on the merits of his claims by granting the motions to dismiss of the several Defendants. Our resolution—affirming the district court's dismissal, pursuant to Rule 12(b)(6), of the Plaintiff's claims against the Defendants which are appealed—clearly establishes that there was no likelihood of success on the merits and therefore that the motion for preliminary injunction was properly denied.

1272-74 (11th Cir. 2005). Bullock argues that the district court erred in (1) dismissing his claims against Defendants in their official capacities based on Eleventh Amendment immunity, (2) dismissing his claims against Defendants in their individual capacities based on qualified immunity because the issue is triable and he was thus entitled to discovery, (3) dismissing his claims against Amy Johnson based on quasi-judicial immunity, and (4) dismissing his claims against the Tax Assessors and Rebecca Marshall as barred by the Tax Injunction Act ("TIA").[2]

## I.    DISCUSSION

### A. *Legal Standards*

We review "the district court's grant of a motion to dismiss *de novo*, accepting allegations in the complaint as true and

---

[2] We DENY the Appellees' motion to strike Appellant's reply brief. However, we will not entertain arguments made for the first time in a reply brief. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). Therefore, to the extent that Appellant raises new arguments in his reply brief, we will not consider them.

We GRANT Appellees' motion to strike Appellant's objections to their brief. This Court's rules permit an appellant to file a brief in reply to the appellee's brief. Fed. R. App. P. 28(c). However, the relevant rule specifies that no further briefs may be filed "[u]nless the court permits." *Id.* Appellant did not receive permission from this Court to file the document he labelled "Plaintiff-Appellant's Objections to Defendant-Appellee's Response Brief." Therefore, it was improperly submitted, and we now strike it.

construing them in the light most favorable to the plaintiff." *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). We review *de novo* whether an entity constitutes an arm of the state under Eleventh Amendment immunity analysis. *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014).

We will hold *pro se* pleadings to a less stringent standard and will liberally construe them. *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But we will not "serve as *de facto* counsel for a party [or] rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69. In addition, all litigants in federal court—*pro se* or counseled—are required to comply with the applicable procedural rules. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Although *pro se* pleadings are held to less stringent standards, issues not briefed on appeal by a *pro se* litigant are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

For a plaintiff to state a claim for relief under 42 U.S.C. § 1983, he must allege: "(1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (internal quotes and citation omitted). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

### B. Application of Eleventh Amendment to County Employees

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Under the Eleventh Amendment, state officials sued . . . in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). This bar applies regardless of whether the relief sought is legal or equitable. *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016). Immunity under the Eleventh Amendment is considered "surrendered" in three situations:

> (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law.

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998) (citations omitted). The state of Georgia has not waived its sovereign immunity "with respect to actions brought in the courts of the

6                          Opinion of the Court                    24-10674

United States." O.C.G.A. § 50-21-23. The Supreme Court has held that Congress did not abrogate the sovereign immunity of Georgia—or any other state—in enacting 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 342–45 (1979).

"To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (*en banc*). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* We consider four factors in assessing whether an entity is an "arm of the State": "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1294 (11th Cir. 2023).

This Court has held that in promulgating policies and procedures governing the condition of confinement in a Georgia county jail, the sheriff does serve as an "arm of the state" and is therefore entitled to Eleventh Amendment immunity. *Purcell ex. rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1325 (11th Cir. 2005). It has likewise held that a Georgia sheriff acts as an arm of the state when he exercises the power to hire and fire deputies. *Pellitteri v. Prine*, 776 F.3d 777, 780-83 (11th Cir. 2015).

The constitutional and statutory framework of Georgia place superior court clerks within the realm of "state officials" for sovereign immunity purposes. Georgia superior court clerks are regulated by the state legislature, they are subject to discipline by a committee appointed by the governor, and counties are barred from taking any action that substantially effects superior court clerks. *See* Ga. Const. art. IX, § 1, para. II(a) and § 2, para. I(c)(1). Thus, superior court clerks in Georgia constitute state officials based on how they are defined by state law, and based on the degree of control the state maintains over them. *Manders*, 338 F.3d at 1308.

Here, the court properly applied the doctrine of Eleventh Amendment immunity to county employees. Sheriff Stacy Nicholson and Superior Court Clerk Amy Johnson were acting as an arm of the state in relation to the actions alleged in Bullock's complaint and thus the district court properly applied the doctrine of Eleventh Amendment immunity to them.

### C. Qualified Immunity

Qualified immunity is an affirmative defense that shields government officials from civil liability in their individual capacities when the government official acted within the scope of his discretionary authority and the official's conduct did not violate clearly established statutory or constitutional rights. *Kesinger v. Herrington*, 381 F.3d 1243, 1247–48 (11th. Cir. 2004). While the defense of qualified immunity is typically addressed at the summary judgment

stage of a case, it may be raised and considered on a motion to dismiss. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). We review the grant of qualified immunity at the motion to dismiss stage *de novo*. *Id.* The proper inquiry is "whether the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (quotation marks omitted).

To invoke qualified immunity, a public official must first establish that she was acting within the scope of her discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The term "discretionary authority" covers "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quotation marks omitted).

Once the defendant establishes that she was acting within the scope of her discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Maddox*, 727 F.3d at 1120. Overcoming the defendant's qualified immunity defense involves a two-part inquiry. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). The plaintiff must show that: (1) "the defendant's conduct violated a statutory or constitutional right," and (2) "the violation was clearly established." *Id.* (internal quotation marks omitted). A right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (*en banc*).

Here, to the extent that Bullock argues the district court erred in granting the Defendants' motions to dismiss because he was entitled to discovery on the issue of qualified immunity, his argument fails because qualified immunity may be raised and considered in a motion to dismiss. Likewise, to the extent he asserts that the district court erred in finding that certain Defendants were entitled to the defense of qualified immunity in their individual capacities because the Defendants failed to meet their burden, his argument fails. The district court properly took the facts Bullock alleged in his complaint as true and those facts supported the court's conclusion that the several Defendants were entitled to qualified immunity.

### D. Sheriff Nicholson

An officer is entitled to qualified immunity for making an arrest if, based on the totality of the circumstances, the officer had arguable probable cause to effectuate the arrest. *Davis v. Williams*, 451 F.3d 759, 762–63 (11th Cir. 2006). Arguable probable cause is a lower standard than actual probable cause, and only requires that "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137

(11th Cir. 2007) (emphasis in original).  To determine whether an officer is entitled to qualified immunity in the context of arguable probable cause, courts do not inquire into the officer's subjective intent or beliefs.  *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010).

Under Georgia law, a person commits the offense of criminal trespass when he knowingly and without authority remains upon the land or premises of another person after receiving notice from the rightful occupant to depart.  O.G.C.A. § 16-7-21.

Local government supervisory officials, sued in their official capacity as agents of a local government entity, are "persons" under § 1983.  *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690 n.55 (1978).  When an officer is sued under § 1983 in his or her official capacity, the suit is construed as an action against the entity of which the officer is an agent.  *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005).  To impose § 1983 liability on a local government entity, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  A plaintiff must identify either (1) an officially promulgated local policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker.  *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

But a plaintiff may also prove a policy "by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*; *see Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 820 (11th Cir. 2017) (applying these deliberate-indifference standards in an action against a county).

Further, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted.). To hold a supervisor liable for a constitutional violation, a plaintiff must show that the supervisor "either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.*

Here, the court did not err in dismissing Bullock's official capacity claims against Nicholson based on Eleventh Amendment immunity. This Court has determined that the sheriff serves as an arm of the state when promulgating policies and procedures governing the condition of confinement in a county jail and when exercising the power to hire and fire deputies. *Purcell ex. rel. Estate of Morgan*, 400 F.3d at 1325; *Pellitteri*, 776 F.3d at 780–83. Accordingly,

Nicholson was acting as an arm of the state in relation to the actions alleged in Bullock's complaint and is entitled to Eleventh Amendment immunity.

Nor did the court err in dismissing Bullock's individual capacity claims against Nicholson based on qualified immunity. As to the arrest claim, Nicholson had probable cause to arrest Bullock for criminal trespass under Georgia law, because, as Bullock admitted in his complaint, he refused to leave Paris's office after being told to leave. O.G.C.A. § 16-7-21. Accordingly, Nicholson is entitled to qualified immunity for arresting Bullock. *Davis*, 451 F.3d at 762–63. As to the jail conditions, the court correctly concluded that Bullock failed to allege that Nicholson either participated directly in unconstitutional conduct or that a causal connection existed between Nicholson's actions and the alleged constitutional violation. *Harrison*, 746 F.3d at 1298. Nor did he allege a history of widespread abuse, a custom or policy of Nicholson's, or any allegation that he had knowledge that deputies at the jail would act unlawfully. *Grech*, 335 F.3d at 1329. Likewise, as to Bullock's failure to train claims, he failed to allege that Nicholson knew of a need to train and supervise the jail staff in a particular area and deliberately chose not to do so. *Gold*, 151 F.3d at 1350.

E.  Superior Court Clerk Amy Johnson

The Georgia Constitution gives the state legislature the power to set the "qualifications, powers, and duties" of Georgia superior court clerks. Ga. Const. art. IX, § 1, para. III(a). Pursuant to

this power, the Georgia state legislature has enacted statutes related to the duties and powers of superior court clerks. *See* O.C.G.A. §§ 15-6-60, 15-6-61. Georgia state law also sets qualifications for superior court clerks, and the governor of Georgia has the authority to form a committee to investigate a clerk's alleged misconduct, which can result in her removal from office. *See id.* §§ 15-6-50, 15-6-82. Indeed, the Georgia Constitution prohibits counties in Georgia from taking actions that "affect any elective county office . . . or the personnel thereof." Ga. Const. art. IX, § 2, para. I(c)(1). In Georgia, superior court clerks are elected county officials. *Id.* art. IX, § 1, para. III(a).

"Whether an official is entitled to absolute immunity is a question of law that [this Court] review[s] *de novo*." *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017). Clerks of the court have absolute immunity for a narrow range of acts "they are specifically required to do under court order or at a judge's direction, and only qualified immunity for all other actions for damages." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981). However, we have also held that nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process. *Roland v. Phillips,* 19 F.3d 552, 555 (11th Cir. 1994). Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process. *Id.*

Georgia law requires that property records be recorded in superior courts. O.C.G.A. § 44-2-1. However, before a document

can be recorded in the superior court's property records, it must be properly attested or acknowledged and must be an original document.  O.C.G.A. § 44-2-14(a).

Here, the court correctly found that Johnson was protected by Eleventh Amendment sovereign immunity against Bullock's official capacity claims because the constitutional and statutory framework of Georgia places superior court clerks within the realm of "state officials" for sovereign immunity purposes.  Nor did the court err in dismissing Bullock's individual capacity claims against Johnson on quasi-judicial immunity grounds because processing court filings is within a clerk's official duties and integrally related to the judicial process.

### F. Tax Assessors

Under the TIA, district courts are prohibited from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  Thus, the TIA bars the exercise of federal jurisdiction if (1) the relief requested by the plaintiff would enjoin, suspend, or restrain a state tax assessment, and (2) the state affords the plaintiff a plain, speedy, and efficient remedy.  *Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1411 (11th Cir. 1984).  The burden is on the plaintiff to allege facts sufficient to overcome the TIA's jurisdictional bar.  *Amos v. Glynn Cnty. Bd. of Tax Assessors*, 347 F.3d 1249, 1256 (11th Cir. 2003), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi*

24-10674                Opinion of the Court                15

*Basic Indus. Corp.*, 544 U.S. 280, (2005).  In light of the Act's overarching purpose to impede federal court interference with state tax systems, "Section 1341 has been construed to be much broader than its words initially suggest." *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir. 1980).[3]

Injunctive relief preventing a state from assessing taxes against the plaintiff plainly constitutes relief that would enjoin, suspend, or restrain a tax assessment under the first element of the TIA.  *See* 28 U.S.C. § 1341.  In addition, the Supreme Court has held that the TIA also prohibits declaratory relief.  *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982) ("[B]ecause Congress' intent in enacting the [TIA] was to prevent federal-court interference with the assessment and collection of state taxes, we hold that the Act prohibits declaratory as well as injunctive relief.").

The Supreme Court has declined to rule on whether the TIA acts as a jurisdictional bar to requests for damages, but has held that comity, also referred to as the doctrine of equitable restraint, bars federal-court jurisdiction over a 42 U.S.C. § 1983 action for damages arising from a state tax system.  *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107 (1981) ("Because we decide today that the principle of comity bars federal courts from granting damages relief in such cases, we do not decide whether [the TIA], standing alone, would require such a result.").  Taxpayers seeking to

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

challenge the validity of a state tax system under federal law must pursue state remedies to do so, provided that the state remedies are plain, adequate, and complete. *Id*. at 116.

The former Fifth Circuit has held that the TIA bars claims for damages because a monetary award would have the same effect on the state as equitable relief, though the Court stopped short of determining whether it precludes *all* suits for damages against administrators of state and local taxes. *A Bonding Co.*, 629 F.2d at 1132–33 (holding that the TIA deprives district courts of jurisdiction over claims for money damages based on the unconstitutionality of the city tax and the tortious nature of enforcement). In *A Bonding Co.*, we noted that "[a] federal court suit for damages against a state tax administrator . . . would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have. Although the federal court's decision in such a case technically would bind only the immediate parties, as a practical matter it would undoubtedly dampen future state collection efforts." *Id*.

In *Noble v. Joint City-Cnty. Bd. of Tax Assessors of Fulton Cnty.*, 672 F.2d 872 (11th Cir. 1982), we explicitly relied on both the TIA and principles of comity in determining that the district court lacked subject matter jurisdiction in a state-tax dispute requesting damages and declaratory relief. 672 F.2d at 875. In cases in which the plaintiffs sought damages for alleged constitutional violations pursuant to 42 U.S.C. § 1983, we have either based our decision solely on the principle of comity or determined that the suit was

"in essence an action for the refund of taxes." *See Ayers v. Polk Cnty., Ga.*, 697 F.2d 1375, 1376-77 (11th Cir. 1983); *Moss v. Georgia*, 655 F.2d 668, 669 (5th Cir. Unit B Sept. 11, 1981).

The second element of the TIA requires that the state court meet certain procedural criteria in providing a plain, speedy, and efficient remedy. *California v. Grace Brethren Church*, 457 U.S. 393, 411, (1982). In particular, the remedy must provide the taxpayer with a "full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Id.* (quotation omitted). Section 48-5-311 of the Georgia Code sets forth the procedure for challenging the assessment of real property for tax purposes. O.C.G.A. § 48-5-311. We have determined that the statutory procedure is plain, speedy, and efficient. *Amos*, 347 F.3d at 1265.

Here, the court correctly dismissed Bullock's claims against the Tax Assessors and Gilmer County Tax Commissioner Rebecca Marshall as barred by the TIA because Bullock's requested relief would enjoin, suspend, or restrain the assessment of his taxes, and is in essence an action for the refund of his taxes.

## G. David Clark and Charlie Paris

The Georgia Constitution states that the governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law. Ga. Const. art. IX, § 2, ¶ I(a), (b). This power

does not extend to actions affecting any court or the personnel thereof. Ga. Const. art. IX, § 2, ¶ I(c)(7). Rather, actions affecting courts or court personnel shall be the subject of general law or the subject of local acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under the Georgia Constitution. Ga. Const. art. IX, § 2, ¶ I(c).

Here, the court properly dismissed Bullock's claims of conspiracy against Paris and Clark in both their official and individual capacities. For the purposes of official capacity claims, Paris and Clark are both functionally equivalent to the entity of Gilmer County. *Abusaid*, 405 F.3d at 1302 n.3. Counties have no control over the courts or court personnel. Ga. Const. art. IX, § 2, ¶ I(c)(7). Thus, the court properly dismissed Bullock's official capacity claims against Paris and Clark related to their alleged direction and involvement with Johnson's refusal to file his documents.

As to the individual capacity conspiracy claims against Paris and Clark, the court correctly found that Bullock failed to allege any violation of a clearly established constitutional right. Further, the court was correct in concluding that the county's absence of authority over the courts removed any potential causal connection between Paris and Clark's actions and the clerk's refusal to file his documents. Ga. Const. art. IX, § 2, ¶ I(c)(7).

For the foregoing reasons, the judgment of the district court denying Bullock's motion for preliminary injunction, and its

24-10674               Opinion of the Court                19

resolution of the motions to dismiss of the several Defendants, is affirmed in all respects.[4]

    AFFIRMED.

---

[4] This opinion has addressed all challenges that Bullock has fairly raised and preserved in his initial brief on appeal. Any challenges to a district court decision not addressed in this opinion, or with respect to a Defendant not named herein or referenced by category or office, is deemed to have been abandoned. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not raised on appeal are deemed waived).