Richard D. McINTYRE, Frank McCloskey, Intervenor,

v.

Betty MORGAN, Al Inman, Don Lutz, O.K. Anderson, Becky Skillman, Carolyn McGuire, Patricia Haley, Janett Padgett, Dixie Frederick, Paula Etheridge, Nedra Groves, Virginia Higgins, and Jewell Sweeney.

No. EV 85–143–C.

United States District Court, S.D. Indiana, Evansville Division.

Sept. 13, 1985.

Michael T. Rudicil, Bloomfield, Ind., for Inman.

Jack R. Robinson, Rockport, Ind., for Groves.

James C. Tucker, Paoli, Ind., for Padgett.

Robert G. Leonard, Washington, Ind., for Morgan.

Michael B. Lett, Lett & Jones, Loogootee, Ind., for McGuire.

Henry C. Hudson, Hawley, Hudson & Almon, Mt. Vernon, Ind., for Etheridge.

Jay D. Allen, Allen & Newkirk, Salem, Ind., for Sweeney.

Robert J. Fair, Fair & Nixon, Princeton, Ind., for Lutz.

James R. Trulock, II, Monroe County Atty., Bloomington, Ind., for Haley.

Lockyear & Kornblum, Evansville, Ind., Lawrence J. Halloran, Washington, D.C., Edward O. DeLaney, Stanley C. Fickle, David F. Hamilton, Barnes & Thornburg, Indianapolis, Ind., for McCloskey.

## MEMORANDUM ORDER

BROOKS, District Judge.

This cause is presently before the Court upon a variety of motions which have been filed by the parties. Intervenor Frank McCloskey has orally renewed a motion to dismiss which he had previously filed and to which plaintiff, Richard McIntyre, had responded, but which the Court has not specifically ruled upon. In addition, McCloskey has also filed a motion to quash notices of depositions and subpoenas duces tecum served upon the defendant county clerks, Betty Morgan, Al Inman, Janett Padgett, and Becky Skillman. Defendant Al Inman has also filed a motion to quash the same notice of deposition and subpoena duces tecum. Finally, McIntyre has filed a motion for relief from this Court's Order of May 17, 1985, which permanently enjoined the defendant county clerks from disposing of or destroying any election materials, voting materials, or ballots used in the November 6, 1984, general election and ordered the continued impoundment of said materials until further order of the Court. Argu-

ment on the above motions was heard on September 11, 1985, and the Court deems the matters ripe for ruling.

Plaintiff filed his Complaint for Injunction on April 30, 1985, naming as defendants thirteen (13) of the fifteen (15) county clerks within the Eighth Congressional District. Essentially, plaintiff has alleged that certain members of the Task Force for the Committee on House Administration as well as certain members of the Committee and the House itself have violated his and other persons' constitutional and voting rights; have violated various provisions of Indiana State Election law; and that there is presently, and will be in the future, other litigation which seeks to redress these wrongs. With respect to the named defendants, plaintiff has alleged only that the county clerks are custodians of the election materials and ballots used in the November 6, 1984, general election; that such materials shall, pursuant to Ind.Code § 3–1–5–12, be destroyed at the expiration of six (6) months from the date of the election; and that the preservation of the election materials and ballots is necessary in order for plaintiff and others to pursue remedies for deprivation of their constitutional rights, and the maintenance of a contested election action by McIntyre pursuant to the Federal Contested Elections Act ("FCEA") 2 U.S.C. § 381 *et seq.* Accordingly, plaintiff requested that the Court issue a preliminary and permanent injunction enjoining the defendants from destroying or otherwise disposing of any election materials used in the November 6, 1984, election until such time as all litigation concerning the election for Office of Representative in Congress for the Eighth Congressional District had been disposed of and for an order requiring the clerks of Lawrence, Greene, Organe and Daviess Counties to open and count thirty-two (32) unnotarized absentee ballots which they have in their possession.

On April 30, 1985, the same day that plaintiff filed his complaint herein, the Court issued a temporary restraining order to prevent the destruction of any election materials by the county clerks. This order was extended on May 9, 1985. On May 17, 1985, after having been advised by the defendants that there was no objection to the continued impoundment of the election materials and ballots, the Court issued an order which "permanently" enjoined the defendants from disposing of or destroying any election materials or ballots used in connection with the November 6, 1984, election, or any subsequent recounts, *until further order of the Court.* The Court however refused to order the opening and counting of the thirty-two (32) unnotarized absentee ballots which plaintiff sought pending a determination by the Court of the issues raised by the motion to dismiss. On August 9, 1985, McIntyre served the clerks of Lawrence, Greene, Orange and Daviess counties with notices of depositions and subpoenas for August 21, 1985, which commanded the clerks to bring "all absentee ballots for the November 6, 1984, general election which remain unopened and uncounted after the Congressional recount." Due to problems with service of notice on Intervenor McCloskey, these notices were vacated and the clerks were renoticed for September 5, 1985. On September 3, 1985, defendant Inman filed a motion to quash the subpoena and on September 5, 1985, McCloskey filed his motion to quash all of the subpoenas served on the clerks. It was agreed, during a telephone conference with the parties, that these depositions would be rescheduled for September 12, 1985, in order to give the parties an opportunity to argue the motions to the Court on September 11, 1985.

At the hearing, McCloskey renewed his motion to dismiss the complaint in this action. In support of the motion, McCloskey argues that the Court lacks jurisdiction over the subject matter of this suit; that the complaint fails to state a claim upon which relief can be granted; that the claims presented are moot; and that the claims are barred by the doctrines of res judicata and collateral estoppel. McIntyre rejoins that McCloskey may not now pursue the motion to dismiss since the Court has already granted part of the relief which was sought; i.e., permanently enjoin-

ing the clerks from disposing of or destroying the election materials, and that the Court lacks the authority to dismiss the action at this time in light of the Court's earlier order enjoining the defendants. The Court believes otherwise.

First of all, the Court is of the opinion that plaintiff misconstrues the nature of the Court's May 17th Order. At the hearing held on that date, arguments were presented on McCloskey's motion to dismiss. And although both McCloskey and certain of the clerk defendants indicated that they had no objection to a continuance of the order preserving the ballots, it was extremely clear that both desired it to be for a limited period of time, notwithstanding plaintiff's request that defendants be permanently enjoined. Additionally, counsel for plaintiff indicated, toward the conclusion of the hearing, that what he desired was a temporary continuance of the restraining order so that he could contact the clerks of all counties regarding their objections to the Court's impoundment order, and that he would submit an amended order which would resolve their objections. The Court, after listening to the arguments of counsel, stated that in its view plaintiff's complaint presented no "case" or "controversy" as to these defendants. Nevertheless, despite what the Court felt might be "over-reaching", the Court agreed to grant the injunctive relief sought with certain understandings. Notably absent from the Court's ruling is any mention that McCloskey's motion to dismiss was denied or mooted by the Court's actions. Thus, the Court finds that, despite the literal language of the written Order, it was the intent of all parties and the Court that the defendants be preliminarily enjoined from destroying or otherwise disposing of the election materials in question pending further consideration of the merits of the case and McCloskey's motion to dismiss by the Court.

Secondly, the Court is of the belief that despite the characterization of the Court's order enjoining defendants, it has the power to modify, vacate, or dissolve the injunction when circumstances warrant it, despite the fact that the original order was neither objected to nor appealed. *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976); *Lee v. Dallas County Board of Education,* 578 F.2d 1177 (5th Cir.1978). Based upon the facts of the case *sub judice,* the Court is of the opinion that circumstances may warrant vacation of its earlier order if the motion to dismiss is meritorious. The Court will thus move to a consideration of McCloskey's motion to dismiss.

McCloskey, in support of his motion to dismiss plaintiff's complaint, points to several areas in which he perceives the complaint to be deficient. First is the jurisdictional allegations of the complaint. McIntyre alleges that this action is brought pursuant to the due process and equal protection provisions of Article I, § 7 and § 5 of the Constitution and in aid of the pursual of an action under the Federal Contested Elections Act, 2 U.S.C. § 381, *et seq.* Jurisdiction is thereby invoked pursuant to the provisions of 28 U.S.C. § 1331(a). McCloskey argues that such jurisdictional basis is defective for two reasons: (1) because there is no case or controversy between McIntyre and the named defendants, and (2) because this Court lacks jurisdiction to aid an FCEA action at this juncture.

It cannot be seriously disputed that under Article III of the Constitution, "the judicial power of federal courts is constitutionally restricted to 'cases' or 'controversies'." *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). And in order for there to be a "case" or "controversy" there must be a genuine dispute between the parties, not between one party and someone not before the Court. As the Supreme Court noted in *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976):

(T)he "case or controversy" limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged actions of the defendant, and not injury that results

from the independent action of some third party not before the court.

■ In the case *sub judice*, McIntyre alleges that certain members of the Task Force appointed by the Committee on House Administration have violated certain of his federal rights. However, there are no allegations that the named county clerk defendants have or have threatened to injure plaintiff in any manner. In fact, taken as a whole, the allegations as to the named defendants establish only that they are custodians of certain election materials who will (presumably), pursuant to Indiana statute, dispose of these materials at the expiration of six (6) months in the absence of a court order to the contrary. However, there is no allegation that the actions which these defendants might undertake are in any way illegal. *See, Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). (party who invokes court's authority must show that he has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant).

McIntyre does not dispute that the wrongs of which he complains were not caused by the actions of the defendants but argues that preservation of the election materials is essential to his (and others) efforts to correct the wrongs and injustices of the Task Force. While it may be true that preservation of the materials (and for that matter, opening of the ballots) may in some manner be beneficial to McIntyre in his pursuit of other litigation, the Court is not of the opinion that injury at the hands of others is sufficient by itself to establish a "case" or "controversy" in the context of this suit, since none of those others are defendants in this case. *Simon v. Eastern Kentucky Welfare Rights Organization, supra,* at 41, 96 S.Ct. at 1925.

Nor is it clear that the wrongs of which McIntyre complains are likely to be redressed by the remedies which he seeks in this case. Enjoining the destruction or disposition of all election materials used in the November 6, 1984, general election will not redress the constitutional wrongs complained of. What it may do is preserve evidence that plaintiff might use in other cases, but the Court finds that it would be mere speculation at this juncture to say that McIntyre, or any other plaintiff; or for that matter, the House will require these materials for other cases. Indeed, McIntyre concedes in his brief in opposition to the motion that Congress itself decides what evidence, if any, it needs to conduct an investigation. (Brief in Opposition, pg. 3).

■ Equally speculative, in the Court's opinion, is the proposition that the opening and counting of the thirty-two (32) absentee ballots will serve to redress any injury suffered by plaintiff. The House of Representatives has conclusively determined which ballots should or should not be counted. That they have the power to do so can't be seriously questioned. *McIntyre v. Fallahay,* 766 F.2d 1078, 1081 (7th Cir.1985). (The House's decisions about which ballots count .... are not reviewable in any court.) Nor can it be disputed that the House is not required to follow state law in determining which ballots count. *McIntyre v. Fallahay, supra,* at 1086. Thus, it would appear unlikely that, the House having once determined not to count the ballots in question, opening of the thirty-two (32) ballots in question would assist plaintiff in redressing the wrongs complained of. Furthermore, this Court has serious reservations about the propriety of ordering these absentee ballots opened and counted. To do so would, in the Court's opinion, potentially frustrate the House's ability under the FCEA to conduct its own investigation of these ballots, a power that is solely delegated to the House, and could improperly intimate how Congress ought to have decided. *See, McIntyre v. Fallahay,* 766 F.2d 1078 (7th Cir.1985). Finally, the opening and counting of these thirty-two (32) absentee ballots could thrust the Court into the position of having to decide which of the ballots should be counted in the event that other defects become apparent after opening. That is an area which is

best left to the ultimate decision maker as to which ballots count, and that is the House of Representatives. Nor does it appear, based upon the Seventh Circuit's decision in *McIntyre v. Fallahay, supra,* that plaintiff is precluded from seeking this relief in the pending state court recount actions.

■ McIntyre has also asserted in his complaint that this case is brought in aid to the pursual of an action under the provisions of the Federal Contested Elections Act ("FCEA") 2 U.S.C. § 381, *et seq.* While at the time the complaint was filed no such action was pending, the Court is cognizant of the fact that McIntyre has now instituted an FCEA action. However, the mere fact that McIntyre has now instituted such an action, does not vest this Court with jurisdiction to entertain requests for relief which might aid plaintiff in the pursuit or maintenance of such an action.

Section 388 of Title 2 United States Code provides that state and federal courts may, upon application, issue and enforce subpoenas for deposition. However, that provision cannot be read in a vacuum, but rather must be considered in conjunction with the other provisions of the FCEA. Those provisions provide a contestant, such as McIntyre, limited discovery rights during a regulated time frame. *See* 2 U.S.C. § 386(c). Notably absent from the language of the Act is any statutory provision which indicates that a court may "aid" the pursual of an FCEA action in any other manner. In the present case, McIntyre does not seek this Court's assistance pursuant to the provisions of the FCEA, but seeks to institute a separate proceeding altogether allegedly so that he may state grounds sufficient to change the outcome of the election in his contest petition. But he has already done that. Nothing these defendants have done, or may do in the future, has impinged upon his right to bring an FCEA action.

What is sought in this case is discovery; discovery that will, hopefully, keep this election dispute alive by providing a basis for other litigation. However, in the Court's opinion, this suit is not the proper method of obtaining the requested relief nor are these defendants the proper party defendants from whom to seek relief for the alleged wrongs and injustices of certain members of Congress. This is not to say that plaintiff may not ever obtain discovery of what he is apparently most concerned with, i.e., how the thirty-two (32) absentee voters cast their ballots, for he is given discovery rights under the FCEA. But it would be improper for this Court to speculate on how the House will allow McIntyre to proceed with discovery in that action.

Accordingly, because the Court finds that this case presents no "case" or "controversy" as to these defendants, and since the Court further finds that the Court lacks jurisdiction at this time to aid plaintiff with discovery in his FCEA action, the Court finds that McCloskey's motion to dismiss should be granted for the reason that the Court lacks subject matter jurisdiction.

■ In addition, the Court finds that the Order of May 17, 1985, enjoining defendants from disposing of or destroying any election materials, voting materials or ballots should be vacated and set aside. The circumstances which led this Court to determine that such injunction was necessary have changed. The materials no longer need be preserved so that McIntyre or other plaintiffs may institute the proceedings which counsel for plaintiff indicated, on May 17th, were going to be commenced. McIntyre has currently pending an FCEA action before the House Committee. If either McIntyre or the House require these materials, they may be subject to a protective order in that action. By order of this Court, dated this date, the Court has dismissed as nonjusticiable the other cause of action in which counsel for plaintiff has argued that the materials were necessary. Additionally, despite plaintiff's counsel's representations at the May 17, 1985, hearing, no amended injunctive order has been tendered to the Court limiting the types or quantities of materials that the clerks are to preserve. Thus, although what plaintiff

apparently really wants are the thirty-two (32) unnotarized, uncounted absentee ballots as well as like ballots which were counted, the clerks are faced with the impoundment of virtually *all* election materials used in the November 6, 1984, general election. Therefore, as pointed out at the May 17th hearing, each of the clerks is faced with the problem of fulfilling their responsibilities with regard to election materials (i.e., purging voter registration lists) when such materials are subject to an injunctive order.

Finally, the Court must look at this case from a practical point of view. Each of the defendant clerks have indicated a willingness to preserve whatever election materials plaintiff actually requires. Three and one-half (3½) months ago plaintiff was to consult with the clerks as to what he really desired to preserve, but he has not yet done so, thus at this stage of the proceedings, the clerks are forced to keep everything impounded, thereby frustrating their ability to carry out their other duties involving these election materials. Furthermore, the Court presumes that, whatever the mandates of state law might be, the clerks will comply with Section 1974 of Title 42 United States Code which provides that Election Administrators are required to preserve election materials used in elections for federal offices for a period of twenty-two (22) months from the date of the election. Since this statute encompasses, among other things, voting registration records, poll lists, applications for absentee ballots, ballot envelopes, tally sheets, computer programs used to tabulate votes, as well as the ballots themselves, it would appear that the materials which plaintiff seeks to preserve are adequately protected even in the absence of an injunction prohibiting their destruction. *See, Donsanto, Federal Law on Retention of Voting Documentation,* FEC Journal 7, Summer 85.

Therefore, by reason of the foregoing, it is ORDERED, ADJUDGED AND DECREED that:

(1) This action be dismissed on the merits with each party to bear their own costs of the action;

(2) That the Court's Order of May 17, 1985, enjoining the defendants from disposing or destroying any election materials, voting materials, or ballots used in connection with the November 6, 1984, election or any recount thereof be vacated and set aside; and

(3) That in light of the Court's Order dismissing this action, the motions of Intervenor McCloskey and defendant Al Inman to quash notice of depositions and subpoenas, as well as the motion of plaintiff McIntyre to amend the Court's injunctive order are rendered moot.